Michele Anderson-West [9249]
RICHARDS BRANDT MILLER NELSON
299 South Main Street, 15th Floor
Salt Lake City, Utah 84111
Telephone: (801) 531-2000
Facsimile:  (801) 532-5506
Email: Michele-Anderson-West@rbmn.com

*Attorney for Plaintiffs*

---

## IN THE UNITED STATES DISCTICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| CHRISTOPHER C. IVIE and MARY ELLEN IVIE,<br><br>    Plaintiffs,<br><br>v.<br><br><br>U.S. BANK NATIONAL ASSOCIATION,<br><br>    Defendant. | COMPLAINT<br><br>[JURY TRIAL REQUESTED]<br><br><br><br>Case No. 2:14-cv-00020-DBP<br>Judge Dustin B. Pead |

Plaintiffs, by and through  the undersigned counsel, Michele Anderson-West of RICHARDS BRANDT MILLER NELSON, complain and allege against Defendant U.S. Bank National Association ("U.S. Bank") for violations of the Electronic Funds Transfer Act, 15 U.S.C. §1693, et seq.  ("EFTA") as follows.

JURISDICTION AND VENUE

1.      This Court has jurisdiction pursuant to 15 U.S.C. §1693m(g).

2.      This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. §1367.

1

3.      Venue is proper in this Court as the claims and allegations giving rise to this action arose in this Court's district.

<u>PARTIES</u>

4.      Plaintiff Christopher C. Ivie ("Chris") is an individual residing in Salt Lake County, Utah.

5.      Plaintiff Mary Ellen Ivie ("Ellen") is an individual residing in Sandy, Utah.

6.      Defendant U.S. Bank is a for-profit corporation organized under the laws of the State of Minnesota, doing business in Salt Lake County, Utah.

<u>FACTUAL ALLEGATIONS</u>

7.      On or about August 2011, in an effort to help Chris learn how to manage a checking and savings account, Ellen applied for a checking account ("U.S. Bank Checking") and savings ("U.S. Bank Savings") accounts for Chris through Defendant's Midvale, Utah office.

8.      Chris used the U.S. Bank Checking and U.S. Bank Savings accounts for small deposits from his part-time job and for depositing Pell Grant money for his classes at Salt Lake Community College.

9.      In April 2013, Chris was induced to purchase a membership in World Ventures, which upon information and belief, is a pyramid scheme.

10.     Chris arranged with Defendant and World Ventures for preauthorized electronic fund transfers ("EFT") of $61.98 to be transferred from the U.S. Bank Checking account to World Ventures on a monthly basis.

11.     After the first EFT, but prior to the next scheduled EFT, Chris and Ellen became suspicious and suspected that the company was engaging in fraudulent activities.

2

12.     On May 21, 2013, before the next scheduled EFT, Chris and Ellen went to the Midvale, Utah branch of U.S. Bank and completed a request to stop the EFT to World Ventures. (A true and correct copy of the Stop Payment Confirmation is attached hereto as Exhibit 1).

13.     Defendant required Chris to pay a $30.00 fee for processing the stop payment request, which Chris paid in cash.

14.     Defendant assured Plaintiffs that there would be no further payments to World Ventures.

15.     On or about June 8, 2013, Plaintiffs received a Notice of Denied U.S. Bank Automatic Transfer from U.S. Bank telling them there were insufficient funds in the U.S. Bank Checking account and stating it was not able to remit the automatic transfer to World Ventures. (A true and correct copy of the June 5, 2013 notice is attached hereto as Exhibit 2).

16.     Ellen and Christ immediately drove to the Branch and met with Defendant's employee, Tyler Walker.

17.     Plaintiffs asked what happened with the stop payment and showed Mr. Walker a copy of the Stop Pay Confirmation.

18.     Mr. Walker told Plaintiffs he would look into it, but told Plaintiffs not to worry because the stop payment order was correct.

19.     On or about July 5, 2013, Plaintiffs received the U.S. Bank Uni-Statement for June 6, 2013 through July 3, 2013. (A true and correct copy of the Uni-Statement is attached hereto as Exhibit 3).

20.     The Uni-Statement reflected an EFT of $61.98 to World Ventures dated June 26, 2013. (Ex. 3)

21.     Plaintiffs cancelled the EFT on May 21, 2013.

22.     The Uni-Statement reflected a charge of $7.50 for over-draft protection dated June 26, 2013. (Ex. 3)

23.     No over-draft protection should have been implemented.

24.     The Uni-Statement reflected a deposit transfer of $100.00 from the U.S. Bank Checking account. (Ex. 3)

25.     Defendant should not have transferred $100.00 from the U.S. Bank Checking Account.

26.     The Uni-Statement reflected a charge of $10.95 as a monthly maintenance fee dated July 3, 2013. (Ex. 3)

27.     Defendant should not have charged $10.95 as a monthly maintenance fee because the type of checking and savings accounts retained by Plaintiffs were supposed to be free.

28.     After Plaintiffs reviewed the Uni-Statement, they immediately drove to the Branch.

29.     Again, Plaintiffs discussed the EFT and associated fees with Mr. Walker.

30.     Again, Mr. Walker told Plaintiffs that it was just an over-sight and assured Plaintiffs that Defendant would fix the situation.

31.     On or about August 7, 2013, Plaintiffs received the U.S. Bank Uni-Statement for July 4, 2013 through August 5, 2013. (A true and correct copy of the Uni-Statement is attached hereto as Exhibit 4).

32.     The Uni-Statement reflected a $20.00 fee to "start scheduled transfer" dated July 5, 2013. (Ex. 4)

4

33.     Defendant was not authorized to deduct such charges or begin any transfers.

34.     The Uni-Statement reflected a $7.50 fee for over-draft protection dated July 26, 2013. (Ex. 4 )

35.     No over-draft protection should have been charged.

36.     The Uni-Statement reflected an EFT of $61.98 to World Ventures dated July 26, 2013. (Ex. 4)

37.     No payments should have been processed to World Ventures after May 21, 2013.

38.     The Uni-Statement reflected a transfer of $100.00 from the U.S. Bank Savings account to the U.S. Bank Checking account dated July 26, 2013. (Ex. 4)

39.     Defendant was not authorized to transfer $100.00 from the U.S. Bank Savings account to the U.S. Bank Checking account.

40.     The Uni-Statement reflected a $10.95 monthly maintenance fee dated August 5, 2013.  (Ex. 4)

41.     Plaintiffs' U.S. Bank Checking account should not have been assessed any monthly maintenance fees.

42.     The Uni-Statement reflected a $20.00 fee to "start scheduled transfer" dated August 5, 2013. (Ex. 4)

43.     Defendant was not authorized to deduct such charges or begin any transfers.

44.     Plaintiffs, after reviewing the Uni-Statement drove to the Branch as they did the previous month.

45.     Again, Plaintiffs were told that the problems would be taken care of.

46.     Chris was so distressed because of the problems from the account that he went to see Dr. Caroline Sanders.

47.     Chris presented with symptoms of depression concerning his ability to afford schooling with Defendant taking his Pell Grant funds that were located in his savings account.

48.     Dr. Sanders prescribed anti-depression medication which Chris began taking the medication in August 2013, which medication he continues to take.

49.     On or about September 7, 2013, Plaintiffs received the U.S. Bank Uni-Statement for August 6, 2013 through September 5, 2013. (A true and correct copy of the Uni-Statement is attached hereto as Exhibit 5).

50.     The Uni-Statement reflected an EFT of $61.98 from the U.S. Bank Checking account to World Ventures dated August 26, 2013. (Ex. 5)

51.     Plaintiffs did not authorize the EFT.

52.     The Uni-Statement reflected a transfer of $100.00 from the U.S. Bank Savings account to the U.S. Bank Checking account dated August 26, 2013. (Ex. 5)

53.     Plaintiffs did not authorize any transfers.

54.     The Uni-Statement reflected an over-draft protection fee of $12.50 dated August 26, 2013.(Ex. 5)

55.     The Uni-Statement reflected a $20.00 charge to "start scheduled transfer" dated September 5, 2013. (Ex. 5)

56.     No transfers were authorized by Plaintiffs.

57.     Plaintiffs immediately drove to the Branch and again discussed the May 21, 2013 stop order and were again told that the account would be rectified.

58.     However, since Defendant exhausted all of the funds in the U.S. Bank Savings account, Chris had no money for books or partial tuition for Salt Lake Community College.

59.     Chris was anxious, upset and distressed that Defendant had taken he was unable to enroll in Salt Lake Community College for the Fall 2013 semester.

60.     On or about September 13, 2013 Plaintiffs received a letter from Defendant that notified Defendant had issued a "provisional credit" to the U.S. Bank Checking account pending its investigation. (A true and correct copy of the September 11, 2013 notice is attached hereto as Exhibit 6).

61.     The letter also instructed Plaintiffs to complete a form enclosed with the letter and provide a detailed letter explaining the circumstances surrounding the dispute. (Ex. 6)

62.     Chris responded via facsimile dated September 23, 2013.

63.     The response included a copy of the June 5, 2013 notice showing that the May 21, 2013 stop request had not been processed; a copy of the Stop Pay Confirmation; a copy of the September 11, 2013 letter from Defendant; and Chris' letter outlining why he and Ellen stopped payments to World Ventures on May 21, 2013. (A true and correct copy of the September 23, 2013 facsimile and enclosures are attached hereto as Exhibit 7).

64.     On or about October 6, 2013, Plaintiffs received the U.S. Bank Uni-Statement for September 6, 2013 through October 3, 2013. (A true and correct copy of the Uni-Statement is attached hereto as Exhibit 8).

65.     The Uni-Statement reflected credits for three payments to World Ventures of $61.98 each dated September 11, 2013. (Ex. 8)

66.     The Uni-Statement reflected refund of two over-draft fees of 7.50 each dated September 6, 2013. (Ex. 8)

67.     The Uni-Statement reflected refund of one over-draft fee of $12.50 dated September 6, 2013. (Ex. 8)

68.     On or about October 9, 2013, Plaintiffs received a letter from Defendant notifying them that it was unable to further assist Plaintiffs with future billings to World Ventures because "no proof of cancellation [was] provided." (A true and correct copy of the October 7, 2013 letter is attached hereto as Exhibit 9).

69.     The October 9, 2013 letter also stated that the charges to World Ventures plus any transactional fees would be reinstated on October 14, 2013. (Ex. 9)

70.     On or about October 26, 2013 Plaintiffs received a letter from Defendant with the caption "URGENT ATTENTION REQUIRED." (A true and correct copy of the October 23, 2013 letter is attached hereto as Exhibit 10).

71.     The letter alerted Plaintiffs that the U.S. Bank Checking account was over-drawn. (Ex. 10)

72.     The letter threatened rejection of future transactions. (Ex. 10)

73.     The letter threatened overdraft fees. (Ex. 10)

74.     The letter threatened that the U.S. Bank Checking account would be closed on November 27, 2013. (Ex. 10)

75.     The letter threatened to charge Plaintiffs $30.00 to close the account. (Ex. 10)

76.     The letter threatened to report the account closure to credit reporting agencies, which reporting would prevent Plaintiffs from obtaining services at other financial institutions. (Ex. 10)

77.     On or about November 8, 2013, Plaintiffs received a Notice of Denied Automatic Transfer from Defendant. (A true and correct copy of the notice is attached hereto as Exhibit 11).

78.     The letter instructed Plaintiffs that Defendant attempted, but was unable to process an automatic transfer. (Ex. 11)

79.     Also on or about November 8, 2013, Plaintiffs received the U.S. Bank Uni-Statement for October 4, 2013 through November 5, 2013. (A true and correct copy of the Uni-Statement is attached hereto as Exhibit 12).

80.     The Uni-Statement reflected a $20.00 charge to "start scheduled transfer" dated October 7, 2013. (Ex. 12)

81.     Defendant was not authorized to start any EFTs.

82.     The Uni-Statement reflected a $7.50 charge for over-draft protection dated October 15, 2013. (Ex. 12)

83.     The Uni-Statement reflected a transfer of $52.57 from the U.S. Bank Savings account to the U.S. Bank Checking account dated October 15, 2013. (Ex. 12)

84.     Plaintiffs did not authorize any transfers from the U.S. Bank Savings account to the U.S. Bank Checking account.

85.     The Uni-Statement reflected that on October 15, 2013, Defendant re-processed the EFTs to World Ventures. (Ex. 12)

86.     Defendant re-submitted funds to World Ventures in disregard to Plaintiffs stop payment request.

87.     On November 13, 2013, Plaintiffs went to the Branch and were given a Transaction History of the U.S. Bank Checking account from August 26, 2013 through November 12, 2013. (A true and correct copy of the Transaction History is attached hereto as Exhibit 13).

88.     The Transaction History included transfers, charges and fees as described above, and identified an additional over-draft fee of $25.00 dated November 12, 2013. (Ex. 13)

89.     Defendant told Plaintiff that nothing could be done with the fees or the EFT.

90.     On or about November 17, 2013 Plaintiffs received a letter from Defendant stating "FINAL WARNING-IMMEDIATE ACTION REQUIRED." (A true and correct copy of the November 14, 2013 notice is attached hereto as Exhibit 14).

91.     Upon seeing the notice, Chris and Ellen were again confused, agitated, anxious and overwhelmed at the situation that was beyond their control.

92.     By letter dated December 3, 2013, Defendant told Plaintiffs that the U.S. Bank Checking Account was sent to collections. (A true and correct copy of the December 3, 2013 letter is attached hereto as Exhibit 15).

93.     On or about December 6, 2013 Plaintiffs received the U.S. Bank Uni-Statement for November 6, 2013 through December 4, 2013. (A true and correct copy of the Uni-Statement is attached hereto as Exhibit 16).

94.     The Uni-Statement reflected an overdraft fee of $25.00 dated November 12, 2013. (Ex. 16)

95.     The Uni-Statement reflected an overdraft fee of $25.00 dated November 19, 2013. (Ex. 16)

96.     The Uni-Statement reflected an overdraft fee of $25.00 dated November 26, 2013. (Ex. 16)

97.     The Uni-Statement reflected a fee of $30.00 dated November 29, 2013 as a "force-closed account fee." (Ex. 16)

98.     In a notice dated Christmas Day, December 25, 2013, Defendant sent a collection notice asking Plaintiffs to pay $50.00 for fees associated with the closure of the U.S. Bank Checking account. (A true and correct5 copy of the December 25, 2013 letter is attached hereto as Exhibit 17).

99.     Plaintiffs have been devastated by the closing of the account and Defendant's actions in ignoring and disregarding the stop payment order of May 21, 2013.

100.    Chris feels betrayed by Defendant.

101.    Chris has in essence, been scammed twice.  First, by World Ventures in conning him into signing up for the pyramid scheme, and second, by Defendant in its continuing to give World Ventures Chris' money, without Plaintiffs' permission.

## FIRST CAUSE OF ACTION
### Violation of the Electronic Fund Transfer Act

102.    Plaintiffs reallege and incorporate herein each of the averments set forth above.

103.    The Electronic Funds Transfer Act 15 U.S. C. § 1693 et seq. ("EFTA") was enacted, inter alia, to provide rights, responsibilities and liabilities for consumers and financial institutions participating in electronic fund and remittance transfer systems. 15 U.S.C. 1693(b).

104.    The term "consumer" means a natural person, which definition includes Plaintiffs Chris Ivie and Ellen Ivie.  15 U.S.C. §1693a(6).

105.    The term "financial institution" means a State or National bank and includes Defendant U.S. Bank. 15 U.S.C. §1693a(9).

106.    The term "electronic funds transfer" means any transfer of funds (other than paper instrument) which is initiated through an electronic terminal, telephonic instrument, computer or magnetic tape as to order, instruct or authorize a financial institution to debit or credit an account. 15 U.S.C. §1693a(7).

107.    The term "preauthorized electronic fund transfer" means an electronic fund transfer authorized in advance to recur at substantially regular intervals. 15 U.S.C. §1693a(10).

108.    In April 2013, Plaintiffs initiated a request for preauthorized electronic fund transfers from the U.S. Bank checking account for the benefit of World Ventures.

109.    The EFTA provides that a consumer "may stop payment of a preauthorized electronic fund transfer by notifying the financial institution orally or in writing at any time up to three business days preceding the scheduled date of such transfer." 15 U.S.C. §16933(a).

110.    Plaintiffs notified Defendant on May 21, 2013 in writing and in person that the electronic fund transfers to World Ventures were to stop.

111.    Defendant violated the EFTA by continuing to allow EFT to occur despite receiving verbal and written notice to suspend the transfers.

112.    Defendant violated the EFTA by waiting several months to conditionally credit Plaintiffs' account.

113.    The EFTA provides that the financial institution shall be liable to a consumer for all damages proximately caused by its failure to stop payment of a preauthorized transfer from a consumer's account when instructed to do so. 15 U.S.C. §1693h(3).

114.    Defendant did not stop payment of the preauthorized transfers from Plaintiffs' checking account and as a result, it is liable to Plaintiffs for all damages resulting from its failure to comply with the EFTA.

115.    Defendant did not provisionally re-credit Plaintiffs' account within the prescribed 10-day period specified in the EFTA and as such, it is liable for treble damages.

116.    Defendant then re-processed the electronic fund transfers to World Ventures after it allegedly conducted an investigation.

117.    Defendant knowingly and willfully concluded that Plaintiffs were in error when such conclusion could not have reasonably been drawn from the evidence available to it.

118.    As a result of Defendant's actions, Plaintiffs incurred late fees.

119.    As a result of Defendant's actions, Plaintiffs saving account was depleted.

120.    As a result of Defendant's actions, Chris suffered increased anxiety, for which he sought medical attention.

121.    As a result of Defendant's actions, Plaintiffs have suffered actual and consequential damages.

/

/

/

/

WHEREFORE, Plaintiffs ask this Court for judgment against Defendant for actual, compensatory and punitive damages as a result of Defendant's violation of the Electronic Fund Transfer Fund Transfer Act, in an amount to be determined at trial.  Plaintiffs further ask the Court for an award of reasonable attorney's fees and costs in bringing this action and for such other relief as the Court deems fair and just.

DATED this 10th day of January, 2014.

RICHARDS BRANDT MILLER NELSON

_____/s/ Michele Anderson-West___

14